## STATE OF NEW JERSEY IN THE INTEREST OF N. L., JUVENILE-APPELLANT.

Argued January 27, 1976—Decided March 10, 1976.

*Mr. Gerald P. Boswell,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Boswell,* of counsel and on the brief; *Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Michael A. Noto,* Assistant Prosecutor, argued the cause for the State of New Jersey (*Mr. Noto,* of counsel and on the brief; *Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. N. L., the juvenile herein, was apprehended while a passenger in a stolen car, and was subsequently adjudicated a delinquent on a finding that he had unlawfully

used a motor vehicle. This act if committed by an adult would be a violation of *N. J. S. A.* 2A:170-38, commonly known as the joy-riding statute and constitutes an act of juvenile delinquency when committed by a person under 18 years of age. The Appellate Division with one judge dissenting, upheld the adjudication. We also affirm.

The State's proofs presented at the Juvenile Court hearing may be summarized as follows: Three officers of the Newark Police Department while on patrol duty in an unmarked car observed a Ford Mustang with two young persons in it being operated in an erratic manner. They continued to watch the vehicle and noticed that the passenger in the front seat kept looking back at the police car. At this point the officers turned their car around and started to follow the other vehicle. After a few blocks, the Mustang attempted a turn and went halfway up on the sidewalk. The police then sounded their siren and put on their light whereupon the vehicle in question "took off" with the police in pursuit. After several blocks, the officers overtook the Mustang when it attempted another turn and ran into a parked car. As the police pulled their car up behind the Mustang the driver put it in reverse and rammed the police car. Both of the occupants of the Mustang tried to get out but the police "jumped out and grabbed them." N. L., then age 15, who was the passenger in the car, was charged with an act of juvenile delinquency (unlawful use of a motor vehicle).

At the Juvenile Court hearing, the sole contention made on N. L.'s part, on motions made at the conclusion of the State's case and also after N. L. had rested without calling any witnesses, was that the State had failed to prove that N. L. had knowledge that the car was stolen or was being used unlawfully.

The trial judge, after hearing the evidence, found that the State had sustained its case. However, he did not make a specific determination that N. L. knew that the car in which he

was a passenger was stolen or was being operated without the owner's permission.

The Appellate Division assumed that knowledge would be an essential element of the statutory offense. Although it believed that such a finding was implicit in the trial judge's determination, it made its own independent findings based on the record, giving consideration to the trial judge's having fully credited the evidence presented by the State.

A majority of the Appellate Division was satisfied from the proofs that a reasonable inference could be drawn that beyond a reasonable doubt N. L. knew that the car in which he was a passenger was either stolen or was being operated without the owner's permission. One of the Appellate Division judges dissented on the ground that the evidence was insufficient to establish such knowledge. N. L. has appealed to this Court as of right. *R.* 2:2–1(a).

It is argued on behalf of N. L. that the evaluation of the evidence by the dissenting Appellate Division judge was correct and that the adjudication of delinquency should be reversed.

The State on the other hand contends (1) that the statute does not require proof of knowledge that the car was stolen or was being used without the owner's permission and, (2) even if proof of such knowledge is required, the evidence presented by the State together with the reasonable inferences to be drawn therefrom was adequate to sustain that burden.

*N. J. S. A.* 2A:170–38, which makes the unlawful use of a motor vehicle a disorderly person offense, provides as follows:

Any person who unlawfully takes or uses any means of conveyance, or is an accessory thereto, is a disorderly person.

\* \* \* \* \* \* \* \*

This statute came into existence in the 1952 Revision of the Crimes Act which downgraded a number of offenses to disorderly person offenses. In that revision the then separate law dealing with the stealing of a motor vehicle, *R. S.* 2:145–

6, was deleted.[1] In its place *N. J. S. A.* 2A:170–38 was adopted making the unlawful use of a motor vehicle a disorderly person offense.

The State argues that this new statute was a legislative response to the taking and using of automobiles which, while not amounting to larceny under the criminal statutes, resulted in the possibility of widespread harm. Because it was difficult, and often impossible to show actual intent, the State argues that the new act was designed to avoid the requirement of showing *mens rea* by making commission of the act without more a disorderly person offense. *Cf. State v. Labato, 7 N. J.* 137 (1951).

We conclude that knowledge is an essential element of the particular statutory offense. A passenger may be completely unaware that the vehicle in which he or she is riding is stolen or is being used without the owner's consent. Motor vehicles are part of our everyday life. It is commonplace to accept a ride with a friend or acquaintance. We cannot conceive that the Legislature intended that an innocent passenger has committed a criminal offense by mere presence in a vehicle which later is shown to be stolen or taken without the owner's consent.

It is to be noted that the proposed *New Jersey Penal Code,* Section 2C:20–10(b) provides that a passenger in a vehicle being used without the owner's consent is guilty of unauthorized use (a petty disorderly person offense) only if at the time he entered the vehicle he knew or was informed that it had been taken, or was being operated or controlled without consent of the owner.

 Our conclusion is that, in the case of a passenger, a violation of *N. J. S. A.* 2A:170–38 is established only if

---

[1] In enacting the 1952 Revision of the Crimes Act the Legislature apparently decided that larceny of a motor vehicle should be included in the omnibus larceny statute. *State v. Bott,* 53 *N. J.* 391, 399 (1969).

it is shown that the passenger had knowledge that the vehicle was stolen or was being used without the consent of the owner. We do not consider it essential that such knowledge exist at the time the passenger entered the vehicle. Such knowledge could well be acquired after the vehicle was entered, with the passenger thereafter voluntarily joining in the escapade. However, once the State proves knowledge on the part of a passenger, should it be contended by the passenger that such knowledge was acquired after the vehicle was entered, and thereafter he or she was an unwilling passenger unable to exit from the vehicle, this is a matter peculiarly within the ken of the person involved and would be an affirmative defense with the passenger having the burden of presenting some evidence to support this contention. See *State v. Blanca,* 100 *N. J. Super.* 241, 248 (App. Div. 1968).

The State's alternate contention is that in any event, it has proved knowledge on N. L.'s part. We think it would have been preferable had the trial judge made a finding on this issue. However, N. L. did not testify or call any witnesses on his behalf; there are no conflicting versions of the facts and we do not really have an issue of credibility. Rather, the question is whether the State's proofs together with the reasonable inference to be drawn therefrom would support a finding that beyond a reasonable doubt N. L. knew that the car in which he was a passenger was either stolen or was being operated without the owner's permission. *Cf. United States v. Boyle,* 402 *F.* 2d 757 (3 Cir. 1968), *cert.* denied 394 *U. S.* 934, 89 *S. Ct.* 1207, 22 *L. Ed.* 464 (1969). The Appellate Division, after reviewing the evidence made its own independent finding that knowledge on N. L.'s part could be inferred. We are satisfied that the record supports this finding. N. L. has made no contention that he acquired knowledge after he entered the vehicle and was an unwilling passenger thereafter.

Affirmed.

CONFORD, P. J. A. D., Temporarily Assigned (dissenting). I am in agreement with the court's construction of the statute but not with the affirmance of the Appellate Division determination. The factual issue of knowledge by the defendant of the unlawful use of the car was one peculiarly for the trier of the facts. The trial judge failed to make a finding on that issue despite the fact that motions to dismiss and for acquittal were expressly addressed to the issue of absence of knowledge. In finding merely that the State had "sustained its burden of proof" the trial judge may well have entertained the view that knowledge was not an element of liability — the position vigorously advanced before us and in the Appellate Division by the State.

In my view the proofs were susceptible, but barely, of a finding of defendant's guilty knowledge. It was inappropriate for an appellate tribunal in a juvenile delinquency case to supply the crucial finding of knowledge beyond a reasonable doubt which the trial court had failed to make. The case should have been remanded to the trial court for a finding of fact on that disputed question. I would so order now and let the issue of guilt abide the event. I therefore dissent from the affirmance.

Justice Pashman joins in this dissent.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER—5.

*For remandment*—Justice PASHMAN and Judge CONFORD —2.